I hope that we can begin. Most parties, if not all, are here. I want to thank Judge Crawford from the District of Vermont for working with us today. Thank you, Jeff. And now I'll turn to the calendar. Manuel Gomez v. City of New York. May it please the court, my name is John Scola. I'm representing Plaintiff Appellant Manuel Gomez. An issue here is whether or not my client consented to a stipulation of dismissal, which withdrew all of his claims that he filed pro se. What happened was his attorney unilaterally signed a stipulation, which essentially dismissed his entire case without his knowledge. We, he then filed- He admits as much, doesn't he, Attorney Reed? Yeah, well, what was confusing, we were here before and then we got remanded back down for an evidentiary hearing. In the hearing, my client unequivocally states that he never gave authority to sign the stipulation. His attorney, Trevor Reed, gets asked the same question about four or five different times by the district court judge. Initially, he says that he did speak with him, but at a conference, which actually happened after the stipulation was signed. Then he says, as he keeps getting asked the question, he kind of gets more strong in his defense of himself, in a way. Because he starts with saying, no, I didn't discuss it prior to signing it. Then he says, I discussed it at the conference. Are you suggesting that the district court abuse his discretion? Yes, the court kind of looked at it, I think, in an improper way, in which they're trying to weigh the testimony of each side. But if you just look at the testimony on its face, both sides are saying the same thing. Gomez is saying- Was there a direct conflict between the testimony of your client and his lawyer, Reed? I don't believe, I think at some point there was. But if you say, as the district court keeps asking Mr. Reed the same question, his answers change each time, if you look at the first answer, he says, yes, I did discuss it at the conference, which happened on April 12th, 2013. The stipulation was actually signed the day before April 11th, 2013. How could he have discussed it with him, and have my client give consent if he signed it the day before the discussions took place? It was filed also on the 11th, wasn't it? It was filed and so ordered on the 11th. And then Trevor Reed, the attorney, spoke with my client on the 12th. Now the other thing that's interesting in the transcript too is that Mr. Reed states that he believes that the 1983 claims would have survived. And that only the state law claims would have been dismissed. How could my client have consented to a stipulation which gutted his whole case, including the 1983 claims, when the attorney basically told him that those claims would have survived? There's no way he could have informed consent on that matter. So let's come down to an analysis of agency law. And I didn't see any analysis in the district court opinion. Did you? No, I did not. I mean, he looked at it more like, basically what happened was, once my client said that he didn't give permission, the district court basically went into this inquiry about a whole host of different things. How many times he saw Mr. Reed prior to when he got back from Afghanistan, all this kind of got bogged down in the muck over here. Really all that needed to be determined was whether or not my client gave consent to sign the stipulation. It's very heavy lifting for us to reverse a district court who says, I watched them, I paid attention to their demeanor, and it says that this is who I think was lying, and this who is credible. Well, I understand that it is a high burden to overturn the decision of the district court, but the credibility of the witnesses wasn't really at play here. The district court really, in his decision, mentioned that heavily. But really what it is, is you just read the transcript on his face. You have one side saying, I never consented to the stipulation. And on the other, you're saying he might have, he didn't, he did. There was never an affirmative yes. It's always a, I thought he did, he might have. And the initial answer, the first answer that's asked to Trevor Reed, he says, yes, I spoke with him about the stipulation. But at the conference, which is after he signed the stipulation. So my client could not have given informed consent. And the district court asked him, I thought, a meaningful question. Did you ever meet with him before? And he said, no, that's page 80 of the transcript. Well, he says, or Reed says, the stipulation was discussed in the judge's chambers. At the conference on April 12th, we had, in which Mr. Gomez was present. The corporation counsel was present. The judge's law secretary was present. And then the district court says, how about before that? because now we're talking about April 12th, although we know that the stipulation was signed on the 11th. Right. So by the time of the 12th, he has already entered into the stipulation. It's already been so ordered by that time. Right. So he says, how about before that? And Reed says, no. Right, he says, no. So how could he have consented? So how could the district court find that he acted appropriately? That's what I don't understand. With all due respect, that's why we're here. OK. All right. Now, I mean, at this point, as the court keeps asking Trevor Reed the question over and over again, it seems to me, and I'm speculating here, that he's starting to get nervous about a malpractice case. There's no question whether malpractice was committed here. The statute of limitations had not ran on the 1983 claims. The state law claims, they did, but not the- The statute of limitations hadn't run? They hadn't run. He said that was one of the reasons. Right, but it was in there. Basically, he's saying, he thought that the 1983 claims were barred by the 90-day 50-H requirements of filing a notice of claim against the city. In fact, the 1983 claims are three years, and you don't have to go through the prerequisite because it's a federal law. Trevor Reed got his whole case, but it was an error on his part. So there's no way my client could have given informed consent based on him telling him that the 1983 claims would have survived. That being said, he didn't do it anyway. He didn't ask him ahead of time. He unilaterally signed the stipulation, thus getting rid of my client's whole case. And he should have been able to consent to that or not consent to that. It's his call, it's his case. It's not the attorney's. What's the remedy? Well, the remedy would be to vacate the stipulation and remand it back for, and then litigate the case as is normal. A new trial looking much like the last one. Well, no, no, no, not a new hearing. Just vacate the stipulation, grant the motion, and then we'll start, we'll litigate, we'll go through litigation like a normal case would. You would say this panel would decide that there had been no agreement. You remanded it back for evidentiary hearing. The evidentiary hearing was conducted, the district court judge ruled that he had given consent. If you're going to reverse that he gave consent, then the only explanation would be to grant that motion for reconsideration, and then reinstate those claims. Didn't the district court find that Reed showed your client the stipulation and discussed its contents before signing it? I don't see how he could have possibly, I mean that's my- But he did find it. And your position is that there is no evidence in the record to support that finding. Is that- If you just look at Mr. Reed's statements, he said I simply discussed it in the chambers of the conference. That was after it was signed. Have you just, did you discuss it before that? No. So I'm just making sure I understand your position. No evidence in the record to support it. Right. Thank you very much. You're reserved two minutes for rebuttal. We will hear from the city of New York. Good morning, your honors. May it please the court. My name is Diana Lawless. I appear on behalf of the city of New York, the appellee in this case. Here the district court did not abuse its discretion in finding that Gomez failed to rebut the presumption that his attorney had the authority to sign the stipulation. I think Reed overturned that presumption himself. When he said, did you talk with him before this stipulation was signed and so ordered? And he said no. Your honor, I do, I understand page 80, that was the first question he was asked. His answer was no, and he talked about discussing the complaint being inartfully worded. But I will point you to what else the district court said, the other questions he was asked. On pages 80 to 81, did you have a discussion with him before you signed the document? I wouldn't have signed without doing that. Do you have a recollection of the conversation? At this point, I know we had discussions, I just don't remember when, where, and how. Page 85, he absolutely recalled discussing the stipulation prior to the conference. There might have been consent over objection. 108 to 109, they go through all of the sentences in Gomez's pro se letter to the court. He answers yes to discussing the stipulation for the conference. He said, did you have permission to dismiss the claims? In my mind, I did, your honor. Page 87, he discussed whether he was going to dismiss some of the claims. He says, Judge, I didn't hear him say no, don't do it, anything like that. My impression was he agreed. Are you arguing that the absence of no is a yes? Well, your honor, here the district court weighed the two sets of testimonies, as your honor said, the judge was able to see and hear the witnesses. The judge had reasons to find that Mr. Gomez was incredible, as the judge laid out. He was inconsistent about when he had been in Afghanistan, when he had been in the United States. They were diametrically opposed as to how many times they had met before the stipulation was signed. He also denied writing a pro se letter to the court that the court confronted him with. And he had no explanation as to why it was not his signature on that letter. So this was really a classic credibility determination for the court. The court was more persuaded by Reed. The court found that he maintained he discussed the stipulation with Gomez before he signed it, and Gomez never told him not to. And he had an unwavering belief he discussed it with Gomez before signing it, and Gomez had not objected. This all came after the court heard the testimony at the hearing, was able to tell, not only by the words, which may not read as well as they should on a cold record, but by hearing and seeing the witnesses and their demeanor. And as your honors have noted, this is a heavy burden to overturn the decision here. It's an abuse of discretion, but there's factual findings. The factual findings record deference, and they can only be overturned for clear error. The plaintiff has not made any arguments about how there was clear error on this record. So it's your position that looking at the record as a whole, instead of focusing on one page, you can't find an abuse of discretion in the district court's factual findings. Yes, your honor. That's our position. And also, just to point out about the scope of the stipulation, this has gone on throughout this litigation. My adversary spoke here, spoke in his brief, we did this in the last litigation, about the stipulation withdrawing all of the claims. The stipulation never withdrew all of the claims, as evidenced by the fact that there was a judgment entered later on after the city won the motion to dismiss on a second set of claims, which were arising from employment. This was malicious prosecution, false arrest, claims arising out of an arrest. And to the extent that my adversary points to confusion in Mr. Reed's testimony about that, it was certainly, as the district court noted, based on questioning by my adversary's counsel for the plaintiff that were based on the faulty premise that the stipulation dismissed all the claims. In response to the court's questions, he confirmed that the claims related to the arrest and prosecution were dismissed and the employment claims survived. So, your honors, again, this was a credibility determination for the court. There's no clear error on the factual findings, and there was- What if the evidence put before us, the evidence of the questions and answers in the courtroom, doesn't comport with what the judge found? Your honors would have to find- Is that clear error? It's clear error if there's a definite and firm conviction that a mistake was committed on this record. There was not. The judge was able to weigh what Reed said, which was opposed to what? He said no. He was asked, did you ever meet with him before? And he said no. What more do you need than that? Well, your honor, that read in isolation. Maybe just know what there were, as I pointed out, several other questions where he was questioned thoroughly by all counsel and by the court itself, where his answers were more firm than that. And also, the Burt- The basic answer is that he didn't tell me no. The absence of no must mean yes. That's a very weak read on which to predicate a permission. He never told me no is what he says. Well, he said more about that. He answered yes to, as I said before, about whether or not he discussed it before. And he said some things about whether or not he believed he can send his impression was that he agreed. But also here, it was the plaintiff's burden. It was the plaintiff's burden to establish that, to rebut the presumption. There's a presumption here that the attorney acted with his authority. Correct, and then he goes into court, has the hearing. That our court ordered, and the first question asked to Mr. Reed is, did you meet with him before the entry of the stipulation? And he says no. Why doesn't that rebut the presumption? Your Honor, as I said, it does not rebut the presumption because his testimony as a whole is different than that. Weighed in total, it was that he had the authority, as the district court put it, that he had the discussion with Gomez before he signed it. Gomez never told him not to sign it. He was unwavering in his belief he discussed it. Gomez told him never not to sign it. This was a pro se person, a lay person, as he argues, in his letter of one week later. Okay, well, you have my question, and I have your answer. Proceed. Do you agree with your colleague, your adversary here, that the core problem is that Attorney Reed was mixed up about which group of cases were time barred, and that he dismissed the wrong of cases in dismissing the constitutional 1983 type cases. Really, the time barred cases were the employment related cases, which he preserved in the stip. I don't know that that's clear on this record. I think this was a situation where it was like three or four years after this had happened, and he no longer had the file. And the questioning certain was premised on the fact that he had dismissed all of the claims, which is not true. But whether or not Attorney Reed believed wrongly or rightly, attorney error is not enough to overcome the law of agency and to overcome the stipulation entered into with the, In the attorney-client relationship. I would just like to point out, just make one broad policy point to your honors, which is that on a record like this, even if your honors believe that the evidence is somewhat equal, the whole legal system really would fall apart to undermine the apparent authority of the attorney here in our system, where people are represented, people choose their representatives in court to uphold the stipulation recognizes the finality for all the parties here at the city. We're being dragged back into this litigation three or four years later. We had thought the case had been done for many years. We were the innocent counterparty here. And it's not infrequent that parties may have regret about stipulations and obviously the court here determined that both parties could not be truthful under the circumstances. Both they could not, he could not accept, the judge could not accept the testimony of both parties and reach a ruling. So the court made a credibility termination. So, your honors, our- I ask, I mean, there are other portions of the hearing transcript where Reid clearly testifies to talking about the stipulation with his client. He answered no to the question, do you talk about it before it was signed? But elsewhere he says, my impression was, he agreed to that. I said, not all the claims are going. Some claims are going to continue to be there, but whether I dismiss them voluntarily by stipulation or not, they're going to be dismissed. Now, that may have been an erroneous calculation on his part, but this testimony clearly is evidencing a conversation he had with his client about the stipulation. Am I right about that? Yes, your honor, and that's the testimony that we pointed out in our brief that the district court relied on. As a whole, one answer to one question may not have been great. The testimony as a whole showed that he agreed. Now, my colleague is focusing on, and this seems to me a pretty pivotal question, that there's, he says, I didn't hear him say no. Is there an obligation on an attorney's part to, before he assumes he has authority to file a stipulation, to ask the client yes or no and hear a direct answer to that question? I don't know that much about the, I would imagine that that is not true. That if the client, if you're in an attorney-client relationship, the attorney explains that this is what he's going to do, and that he's going to do it. And there's no active objection from the client, then that would be enough to say that there's authority. Do you think it's sufficient to say if I don't hear from you, I'm going to assume you agree? Well, your honor, I don't want to make any representations about what the actual law of agency is in attorney-client relations. And that's an interesting point. Did the district court discuss the law of agency in any depth in his opinion? Your honor, the district court did not discuss the law of agency. We did set out in our brief that this meets the standard of apparent authority. The attorney had apparent authority, and he had the indicia of actual authority based on the answers to this question. But this court also did set forth what the standard was, but the presumption, this court did not mention specifically agency law principles in its decision when it remanded. Thank you. Thank you, your honor, so we ask that the court affirms, the district court. Thank you, counsel. Mr. Scola, you've reserved two minutes for rebuttal. I think you've hit home on exactly what the point is. My client never consented to it affirmatively. He was in Afghanistan. He came back, he was in the conference. He found out at the conference that the case was being dismissed. What if your client engaged in words or conduct that would cause the attorney to have a reasonable belief that he was authorized to do what he was proposing to do? I don't think he engaged in anything of that sort. He didn't, and look at his actions. He's flying back and forth from Afghanistan for this case. The moment he finds out that the case has been dismissed, or parts of the case have been dismissed, he immediately writes a motion to the court to, he terminated Trevor Reed, and then asked him for reconsideration to vacate the stipulation. Everything that he's done to this court, including his testimony, says he never gave consent. Trevor Reed, whether you find him credible or not, his testimony on his face is conflicting. If on one side he's saying that he may have given consent, he didn't give consent, he never said affirmatively that he did give consent. On the other hand, Mr. Gomez is saying, I never gave consent. The court should err on the side of the plaintiff. It's an injustice that his case got thrown out. Whether or not the stip dismissed everything or not is of no moment. The effects of the stipulation effectively dismissed the whole case. I followed the second and third amendment complaint. I knew they were going to get tossed. I mean, they just were. There was no claims left. They were all gutted. The off-duty incident took place on August 28th, 2009. Right. So three years later. He was in jail for, I think, seven days. Right, but it was- That would push it back. Well, it's three years later, because this took place on August 2012, right? This is, yeah, I believe so. So three years later, the judge false him for not knowing what day he was home from Vietnam. Yeah, from Afghanistan. Yeah, essentially. Essentially that's what happened. That seems harsh. I agree. Or a pro se. Well, I agree. If you look at the transcript, it seems to me like the district court judge, he led Mr. Reed down the path to try to get him to say that he gave consent. I don't know, it wasn't malicious, I don't believe. But the effects of it were basically to throw out this entire case, almost to justify the initial decision. I know it's extra record, but we all know that Mr. Reed has since been disbarred. Yes, that's true. Yes, okay. For payroll taxes. And it should also be noted that Mr. Reed sat in on the testimony of Mr. Gomez before he testified in court. Thank you. Thank you very much. Thank you both. We'll reserve decision.